IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

THE ESTATE OF KAREN A. SMITH, LEAH LOCKE
as Administratrix of the ESTATE OF KAREN A. SMITH;
LEAH LOCKE, individually and on behalf of all
Wrongful death beneficiaries of KAREN A. SMITH;
CHELSEA MORTON, individually and on behalf of all
Wrongful death beneficiaries of KAREN A. SMITH;
and RACHEL KNIGHT, individually and on behalf of all
Wrongful death beneficiaries of KAREN A. SMITH PLAINTIFFS

VERSUS NO. 1:15CV104-SA-DAS

TISHOMINGO COUNTY, MISSISSIPPI;
GLENN WHITLOCK, In His Official Capacity,
BENNY PARRISH, RODNEY WADDLE,
TERRY JACKSON, GARY HARLAND,
ANTHONY CURTIS, WANDA SANDERSON,
JUSTIN CLARK, LINDSEY TIMBES,
BARRY STUART, DYLAN ROGERS,
MATTHEW THORN, JORDEN WILLIAMS,
JOE WALKER, JESSICA OSBORNE,
In Their Individual Capacities,
AND SOUTHERN HEALTH PARTNERS, INC. DEFENDANTS

JURY TRIAL DEMANDED

FIRST AMENDED COMPLAINT

COME NOW, the Plaintiffs, The Estate of Karen A. Smith; Leah Locke as Administratrix of the Estate of Karen A. Smith; Leah Locke, individually and on behalf of all Wrongful death beneficiaries of Karen A. Smith; Chelsea Morton, individually and on behalf of all wrongful death beneficiaries of Karen A. Smith; and Rachel Knight, individually and on behalf of all wrongful death beneficiaries of Karen A. Smith

(hereinafter referred to collectively as "Plaintiffs"), and state their causes of action for actual, compensatory and punitive damages and for reasonable costs of this action and attorneys' fees for the Defendants' violation of their rights under the Fourth and Fourteenth Amendments made actionable pursuant to 42 U.S.C. § 1983 and for violations of Mississippi statutory and common law. The following averments support this civil action:

PARTIES

1. Plaintiff Leah Locke is an adult resident citizen of the State of Mississippi. Leah Locke is a party to this suit as Administatrix of the Estate of Karen A. Smith, deceased, and in her individual capacity as the biological daughter of Karen A. Smith, as an heir to the estate of Karen A. Smith, and as wrongful death beneficiary of Karen A. Smith.

2. Plaintiff Chelsea Morton is an adult resident citizen of the State of Mississippi. Chelsea Morton is a party to this suit as the biological daughter of Karen A. Smith, deceased, as an heir to the Estate of Karen A. Smith, and as wrongful death beneficiary of Karen A. Smith. Chelsea Morton joins in the wrongful death action asserted by Leah Locke.

3. Plaintiff Rachel Knight is an adult resident citizen of the State of Florida. Rachel Knight is a party to this suit as the biological daughter of Karen A. Smith,

deceased, as an heir to the Estate of Karen A. Smith, and as wrongful death beneficiary of Karen A. Smith. Rachel Knight joins in the wrongful death action asserted by Leah Locke.

4. Defendant, Tishomingo County, Mississippi (hereinafter "Tishomingo County"), is a political subdivision of the State of Mississippi. Defendant, Tishomingo County is responsible for the Tishomingo County Sheriff's Department and for the training, actions and supervision of its law enforcement officers, including deputies and jailers, acting under color of state law and pursuant to its recognized customs, policies, procedures, and practices. Defendant, Tishomingo County is further responsible for the Tishomingo County Jail and for the training, actions and supervision of its jail employees and officers acting under color of state law and pursuant to its recognized customs, policies, procedures and practices. Defendant, Tishomingo County may be served with process through its Chancery Clerk, Peyton Cummings.

5. Defendant, Glenn Whitlock is the former Sheriff of the Tishomingo County, Mississippi, and at all times relevant operated under color of state law. Glenn Whitlock is being sued in his official capacity as the Sheriff of the Tishomingo County, Mississippi. Defendant, Glenn Whitlock is responsible for the Tishomingo County Sherriff's Department and for the training, actions and supervision of its Deputies acting under color of state law and pursuant to its recognized customs, policies,

procedures and practices. Defendant, Glenn Whitlock is further responsible for the Tishomingo County Jail and for the training, actions and supervision of its jail employees and officers acting under color of state law and pursuant to its recognized customs, policies, procedures and practices. He may be served with process at his place of employment at 1208 Bettydale Drive, Iuka, Mississippi 38852.

6. Defendant, Benny Parrish is the Jail Administrator for the Tishomingo County Sheriff's Department, and at all times relevant operated under color of state law. Benny Parrish is being sued in his individual capacity as the Jail Administrator. Defendant, Benny Parrish is responsible for the Tishomingo County Jail and for the training, actions and supervision of its jail employees and officers acting under color of state law and pursuant to its recognized customs, policies, procedures and practices. He may be served with process at his place of employment at 1208 Bettydale Drive, Iuka, Mississippi 38852.

7. The Defendant, Rodney Waddle, in his individual capacity, was at all times relevant to this civil action a deputy sheriff for the Tishomingo County Sheriff's Department acting within the course and scope of his employment. He may be served with process by service of a Complaint and Summons upon him at 1208 Bettydale Drive Iuka, Mississippi 38852.

8. The Defendant, Terry Jackson, in his individual capacity, was at all times

relevant to this civil action a police officer for the Town of Tishomingo acting within the course and scope of his employment. He may be served with process by service of a Complaint and Summons upon him at 1281 Main Street, Tishomingo, Mississippi 38873.

9. The Defendant, Gary Harland, in his individual capacity, was at all times relevant to this civil action a communications officer for the Tishomingo County Sheriff's Department acting within the course and scope of his employment. He may be served with process by service of a Complaint and Summons upon him at 1208 Bettydale Drive Iuka, Mississippi 38852.

10. The Defendant, Anthony Curtis, in his individual capacity, was at all times relevant to this civil action a detention officer for the Tishomingo County Sheriff's Department acting within the course and scope of his employment. He may be served with process by service of a Complaint and Summons upon him at 1208 Bettydale Drive Iuka, Mississippi 38852.

11. The Defendant, Wanda Sanderson, in her individual capacity, was at all times relevant to this civil action a detention officer for the Tishomingo County Sheriff's Department acting within the course and scope of her employment. She may be served with process by service of a Complaint and Summons upon her at 1208 Bettydale Drive Iuka, Mississippi 38852.

12. The Defendant, Justin Clark, in his individual capacity, was at all times

relevant to this civil action a detention officer for the Tishomingo County Sheriff's Department acting within the course and scope of his employment. He may be served with process by service of a Complaint and Summons upon him at 1208 Bettydale Drive Iuka, Mississippi 38852.

13. The Defendant, Lindsey Timbes, in her individual capacity, was at all times relevant to this civil action a detention officer for the Tishomingo County Sheriff's Department acting within the course and scope of her employment. She may be served with process by service of a Complaint and Summons upon her at 1208 Bettydale Drive Iuka, Mississippi 38852.

14. The Defendant, Barry Stuart, in his individual capacity, was at all times relevant to this civil action a detention officer for the Tishomingo County Sheriff's Department acting within the course and scope of his employment. He may be served with process by service of a Complaint and Summons upon him at 1208 Bettydale Drive Iuka, Mississippi 38852.

15. The Defendant, Dylan Rogers, in his individual capacity, was at all times relevant to this civil action a detention officer for the Tishomingo County Sheriff's Department acting within the course and scope of his employment. He may be served with process by service of a Complaint and Summons upon him at 1208 Bettydale Drive Iuka, Mississippi 38852.

16. The Defendant, Matthew Thorn, in his individual capacity, was at all times relevant to this civil action a detention officer for the Tishomingo County Sheriff's Department acting within the course and scope of his employment. He may be served with process by service of a Complaint and Summons upon him at 1208 Bettydale Drive Iuka, Mississippi 38852.

17. The Defendant, Jorden Williams, in his individual capacity, was at all times relevant to this civil action a detention officer for the Tishomingo County Sheriff's Department acting within the course and scope of his employment. He may be served with process by service of a Complaint and Summons upon him at 1208 Bettydale Drive Iuka, Mississippi 38852.

18. The Defendant, Joe Walker, in his individual capacity, was at all times relevant to this civil action a detention officer for the Tishomingo County Sheriff's Department acting within the course and scope of his employment. He may be served with process by service of a Complaint and Summons upon him at 1208 Bettydale Drive Iuka, Mississippi 38852.

19. The Defendant, Jessica Osborne, in her individual capacity, was at all times relevant to this civil action a nurse charged with providing medical attention to individuals detained at the Tishomingo County Jail pursuant to a contract with the Tishomingo County Sheriff's Department acting within the course and scope of her

employment. She may be served with process by service of a Complaint and Summons upon her at 1208 Bettydale Drive Iuka, Mississippi 38852.

20. The Defendant, Southern Health Partners, Inc. ("Southern Health"), is a Tennessee Corporation, with a principal place of business at 2030 Hamilton Place Boulevard, Suite 140, Chattanooga, Tennessee 37421. It may be served with process by service of a Complaint and Summons upon its registered agent, C T Corporation System, 645 Lakeland East Drive, Suite 101, Flowood, Mississippi 39232.

## JURISDICTION AND VENUE

21. This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. §1331 (federal question), 28 U.S.C. § 1343 (civil rights), and 28 U.S.C. § 1367 (supplemental).

22. Venue is proper ain this judicial district pursuant to 28 U.S.C. § 1391 as the events and omissions giving rise to Plaintiffs' claims occurred within this judicial district.

## CAUSE OF ACTION

23. On June 1, 2014, an emergency call was placed to the Tishomingo County Sheriff's Department by an employee of the Dollar General store in Tishomingo, Mississippi.

24. The employee of the Dollar General informed the dispatcher, the Defendant

Harland, that a customer at the store had purchased a large quantity of Tylenol and had threatened to kill herself by ingesting the Tylenol.

25. The employee of the Dollar General provided the Defendant Harland with a description of the customer's vehicle and the license tag number.

26. The customer in the Dollar General who purchased the Tylenol and threatened to kill herself by ingesting the Tylenol was the Decedent, Karen A. Smith.

27. After leaving the Dollar General with the large quantity of Tylenol, the Decedent Smith, called her mother and informed her mother that she attempted to kill herself by ingesting a large quantity of Tylenol.

28. Alarmed, the Decedent Smith's mother made an emergency call to the Tishomingo County Sheriff's Department and informed the dispatcher, the Defendant Harland, that her daughter had ingested a large amount of Tylenol on an effort to kill herself.

29. The Decedent's mother provided the Defendant Harland with the Decedent Smith's address and directions to her home.

30. The Defendant Harland informed the Decedent Smith's mother that they were already aware of the suicide attempt and were looking for her daughter.

31. The Defendant Waddle, fully aware of the fact that the Decedent Smith had attempted suicide by ingesting Tylenol, arrived at the Decedent's Smith home.

32. At the Decedent Smith's home, in plain sight on the coffee table were several pill bottles of Tylenol with the contents strewn about.

33. Despite possessing actual knowledge that the Decedent Smith had attempted suicide by ingesting Tylenol, neither the Defendant Harland nor the Defendant Waddle provided medical assistance or summoned medical assistance for the Decedent Smith and manifested deliberate indifference to a known serious risk of harm to the Decedent Smith.

34. The Defendant Waddle took the Decedent Smith into custody despite the fact that no probable cause existed to detain or arrest the Decedent Smith and no legal process had been initiated to seek the detention of the Decedent Smith.

35. The Defendant Waddle requested that the Defendant Jackson transport the Decedent Smith from her home to the Tishomingo County Jail due to the fact that the Defendant Jackson's patrol car was equipped with a cage for transporting prisoners.

36. Despite possessing actual knowledge that the Decedent Smith had attempted suicide by ingesting Tylenol, the Defendant Jackson failed to provide or summon emergency medical assistance for the Decedent Smith and manifested deliberate indifference to a known serious risk of harm to the Decedent Smith.

37. Instead of transporting the Decedent Smith to a medical facility where she could receive treatment for her ingestion of Tylenol, in an attempt to commit suicide,

the Defendant Jackson transported the Decedent Smith to the Tishomingo County Jail where she was held involuntarily held without probable cause or lawful process.

38. While being booked at the Tishomingo County Jail, the Decedent Smith vomited several times as a result of the toxicity from the Tylenol she ingested.

39. Despite her vomiting and despite possessing actual knowledge that the Decedent Smith had attempted suicide by ingesting Tylenol, neither the Defendant Thorn nor the Defendant Williams provided medical assistance or summoned emergency medical assistance for the Decedent Smith and manifested deliberate indifference to a known serious risk of harm to the Decedent Smith.

40. The Defendant Williams called the Defendant Osborne to inquire as to what should be done with the Decedent Smith.

41. The Defendant Osborne was employed by the Defendant Southern Health as a nurse and was responsible for providing medical care to individuals detained at the Tishomingo County Jail pursuant to a contract between the Defendant Tishomingo County and the Defendant Southern Health.

42. Despite possessing actual knowledge that the Decedent Smith had attempted suicide by ingesting Tylenol, the Defendant Osborne failed to provide or summon emergency medical assistance for the Decedent Smith and manifested deliberate indifference to a known serious risk of harm to the Decedent Smith.

43. Instead, of advising the Defendant Williams to seek immediate emergency medical attention for the Decedent Smith, the Defendant Osborne advised the Defendant Williams to administer phenergan, a sedating drug, without evaluating the Decedent Smith or ascertaining the cause of her vomiting thus manifesting deliberate indifference to a known risk of harm to the Decedent Smith.

44. On June 2, 2014, the Decedent Smith manifested obvious signs of extreme medical distress, including vomiting blood, from gastrointestinal bleeding related to her ingestion of Tylenol, and altered mental status.

45. The Decedent Smith also manifested slurred speech and was described as appearing drunk despite the fact that she had been in jail since the night before without access to any intoxicants.

46. Despite possessing actual knowledge that the Decedent Smith had attempted suicide by ingesting Tylenol, and despite the obvious signs of extreme medical distress, the Defendant Parish and the Defendant Osborne failed to provide or summon emergency medical assistance for the Decedent Smith and manifested deliberate indifference to a known serious risk of harm to the Decedent Smith.

47. The Decedent Smith spent June 2, 2014, languishing in the Tishomingo County Jail, despite the absence of any probable cause or lawful basis to detain her, without any access to medical care or attention while the Tylenol she had ingested

during her suicide attempt went about destroying her internal organs.

48. On June 3, 2014, the Decedent Smith, complained to the Defendant Osborne of "chest pain" and heightened anxiety. The Defendant Osborne gave the Decedent Smith vistaril, a sedating drug.

49. Despite possessing actual knowledge that the Decedent Smith had attempted suicide by ingesting Tylenol, the Defendant Osborne failed to provide or summon emergency medical assistance for the Decedent Smith and manifested deliberate indifference to a known serious risk of harm to the Decedent Smith.

50. Later that afternoon, the Decedent Smith received a visit from a mental heath therapist for a mental health evaluation. The Decedent Smith was escorted to her meeting by the Defendant Walker.

51. The Decedent Smith informed the mental health therapist that she had been off of her psychotropic medications since February 2014 and had ingested "nine bottles" of Tylenol in her suicide attempt on June 1, 2014.

52. The mental health therapist had personal knowledge that jail staff at the Tishomingo County Jail had knowledge of the Decedent Smith's suicide attempt and her ingestion of the Tylenol.

53. The mental health therapist recommended to jail personnel that the Decedent Smith receive inpatient treatment for stabilization and be kept on suicide watch until

she could be transported to a treatment facility.

54. Despite these recommendations, no action was taken by the Defendants, including the Defendant Walker and the Defendant Curtis to secure the Decedent Smith any medical treatment. The failure of the Defendant Walker and the Defendant Curtis to provide or summon emergency medical assistance for the Decedent Smith manifested deliberate indifference to a known serious risk of harm to the Decedent Smith.

55. During the late evening or early morning of June 3-4, 2014, the Decedent Smith's health continued to deteriorate markedly.

56. The Decedent Smith was observed by the Defendant Sanderson, the Defendant Timbes, the Defendant Clark, and the Defendant Rogers in her holding cell naked and was described as appearing "drunk."

57. The Decedent Smith's mental state was altered and she could not stand or clothe herself and required the Defendant Sanderson and the Defendant Timbes to dress her and place her on her bunk in the cell because she was mentally and physically unable to do so.

58. The Defendant Osborne was notified of the deterioration of the Decedent Smith's condition but took no action.

59. Despite possessing actual knowledge that the Decedent Smith had attempted

suicide by ingesting Tylenol, and despite the obvious signs of extreme medical distress, the Defendant Sanderson, the Defendant Timbes, the Defendant Clark, the Defendant Stuart the Defendant Osborne failed to provide or summon emergency medical assistance for the Decedent Smith and manifested deliberate indifference to a known serious risk of harm to the Decedent Smith.

60. The Decedent Smith was found several hours later laying on the floor of her cell with an altered mental status, unable to get into her bunk, and with slow verbal response. In addition, the Decedent Smith had what appeared to be "smokeless tobacco" above her lip (coffee ground emesis a sign of gastrointestinal bleeding), an oxygen saturation level of 88%-90% (hypoxemia) and a blood glucose level of 64 (hypoglycemia).

61. Despite possessing actual knowledge that the Decedent Smith had attempted suicide by ingesting Tylenol, and despite the obvious signs of extreme medical distress, the Defendant Sanderson, the Defendant Timbes, the Defendant Clark, the Defendant Stuart the Defendant Osborne failed to provide or summon emergency medical assistance for the Decedent Smith and manifested deliberate indifference to a known serious risk of harm to the Decedent Smith.

62. The Decedent Smith continued to languish in her cell without any access to medical care and without being provided any emergency medical care.

63. Hours later, the Decedent Smith was unresponsive in her cell and the Defendant Rogers was unable to wake her. At that point a fingernail press and sternal rub administered by the Defendant Rogers was administered and the Decedent Smith barely responded.

64. At this point, approximately two and a half days after she overdosed on Tylenol, the Decedent Smith was provided medical attention when emergency responders were called to the Tishomingo County Jail.

65. The Decedent Smith was transported to a hospital where she died as a result of multi-organ failure caused by acetaminophen toxicity.

66. At all times relevant to this civil action, the individual defendants were acting under the color of state law.

67. The Defendant Tishomingo County and the Defendant Whitlock, in his official capacity, failed to properly train and supervise the deputies and jail staff, and failed to enact proper procedure regarding lawful detention and treatment of individuals with mental health and medical emergencies. Said failure to train amounted to deliberate indifference to the health and welfare of the Decedent Smith.

68. At all times relevant to this civil action, the individual defendants acted in the absence of adequate supervision and training as it relates to the proper manner in which to respond to calls involving injured or possibly overdosed persons, how to

conduct investigations of suicide attempts, lawful arrest and detention, and the proper treatment of detained individuals who attempted suicide.

69. The Defendant Tishomingo and the Defendant Whitlock, in his official capacity, failed to provide deputies and jailers with adequate supervision and training and by failing to enact consistent and unambiguous policies, exhibited deliberate indifference to the health and welfare of the Decedent Smith.

70. Tishomingo County lacks adequate, clear and unambiguous policies regarding the manner in which to respond to calls involving injured or possible overdosed persons, how to conduct a proper investigation, and regarding lawful arrests and detainments and the proper treatment of persons detained. The lack of adequate, clear and unambiguous policies was the moving force behind the abuse of Karen A. Smith and violation of her civil and constitutional rights.

71. At all times relevant to this lawsuit, the policies, practices, and customs, of Defendant Tishomingo County and Defendant Whitlock, in his official capacity, encouraged and enabled deputies and jailers to act with deliberate indifference to the constitutional rights of individuals. The said policies, practices, and/or customs tolerated and encouraged gross misconduct of its deputies and jail staff by failing to adequately screen for hiring, supervise, discipline, or train its deputies and jail staff.

72. The death of the Decedent Smith was the result of deficient training and

supervision and unconstitutional policies, practices and customs by Defendants Tishomingo County and Defendant Whitlock.

73. The aforementioned acts and omissions of the individual defendants were committed with reckless disregard to the Decedent Smith's federally protected rights.

74. At all times relevant to this civil action the Defendant Southern Health failed to implement policies, practices, customs or usages for addressing the medical and mental health needs of suicidal detainees. The failure to implement adequate policies amounted to deliberate indifference to the health and safety of the decedent Smith.

75. The Defendant Osborne at all times relevant to this civil action acted as an agent and employee of the Defendant Southern Health and the Defendant Southern Health is vicariously liable for all of her acts and omissions.

76. As a result of the Defendants' acts and omissions, the Decedent Smith suffered extreme physical pain and suffering, emotional distress and loss of enjoyment of life. Plaintiffs have lost the lifelong love, companionship and support of their mother, and have suffered emotional distress and mental anguish.

(Claim 1 Fourth Amendment)

77. Plaintiffs incorporate herein each and every preceding paragraph as if fully set forth herein and further allege as follows:

78. The Defendant Tishomingo County, the Defendant Whitlock, in his official

capacity, the Defendant Waddle, and the Defendant Jackson violated the Decedent Smith's clearly established right to be free from unreasonable arrest and detention by arresting and detaining the Decedent Smith without probable cause and in the complete absence of lawful process.

(Claim 2 Fourteenth Amendment)

79. Plaintiffs incorporate herein each and every preceding paragraph as if fully set forth herein and further alleges as follows:

80. All of the Defendants violated the Decedent Smith's clearly established right to adequate medical care during her unlawful detention by denying her necessary emergency medical care despite being subjectively aware of a serious risk of harm to the Decedent Smith's health and safety from the denial of said medical care. Said violation by Defendants were the proximate cause of the Decedent Smith's suffering and death.

(Claim 3 MTCA False Arrest and Imprisonment)

81. Plaintiffs incorporate herein each and every preceding paragraph as if fully set forth herein and further alleges as follows:

82. Defendant Tishomingo County, falsely, unlawfully, and without probable cause detained the Decedent Smith on June 1, 2014, through June 4, 2014, in violation of her rights under Mississippi statutory and common law.

83. As a result of the Defendant Tishomingo County's actions, the Decedent

Smith suffered damages, including but not limited to physical injuries, mental and emotional distress and death.

(Claim 4 MTCA Wrongful Death Reckless Disregard)

84. Plaintiffs incorporate herein each and every preceding paragraph as if fully set forth herein and further alleges as follows:

85. The actions and omissions of the Defendant Tishomingo county through the unlawful detention of the Decedent Smith and denying her emergency medical assistance which caused the anxiety, emotional distress, pain, suffering, and injuries to the Decedent constituted reckless disregard all in violation of Mississippi statutory and common law.

86. The Defendant Tishomingo County breached its duties to the Decedent Smith which caused the injuries and damages suffered by her and by Plaintiffs.

87. The Defendant Tishomingo County's acts and omissions, give rise to a cause of action for wrongful death pursuant to the Mississippi Wrongful Death Statute, Mississippi Code Ann. § 11-7-13, which cause of action is stated on behalf of the Plaintiffs and wrongful death beneficiaries of the Decedent Smith.

(Claim 5 - Intentional Infliction of Emotional Distress)

88. Plaintiffs incorporate herein each and every preceding paragraph as if fully set forth herein and further alleges as follows:

89. The acts and omissions of all of the Defendants, as set forth above were extreme and outrageous and intolerable in a civilized society and caused the Decedent Smith extreme emotional distress.

90. The Defendants knew, or should have known, that their actions would evoke outrage or revulsion resulting in severe emotional distress and anxiety on the part of the Decedent Smith. As a direct and proximate result of Defendants' willful, acts the Defendant Smith and the Plaintiffs were injured and damaged as alleged herein.

(Damages)

91. Plaintiffs incorporate herein each and every preceding paragraph as if fully set forth herein and further alleges as follows:

92. As a direct and proximate result of the actions and omissions of Defendants, Karen A. Smith suffered damages including, but not limited to, medical and funeral expenses, physical injuries, pain and suffering, mental anguish, past and future lost wages and loss of life.

93. Plaintiffs, as the wrongful death beneficiaries of Karen A. Smith, are legally entitled under the Mississippi Wrongful Death Statute, Miss. Code Ann. § 11-7-13, to recover in this action all damages for all wrongful death beneficiaries of Decedent Smith whose death was legally and proximately caused by the acts and omissions of Defendants.

54. As a result of the aforementioned acts and or omissions, Defendants are liable for all elements of damages arising from the violation of Decedent Smith's rights and her wrongful death, including but not limited to the following:

a. damages for the physical pain and suffering of Karen A. Smith prior to her death;

b. damages for the mental anguish and horror suffered by Karen A. Smith prior to her death;

c. damages for the losses of financial support and maintenance which Karen A. Smith provided and would have continued to provide to the Plaintiffs and the wrongful death beneficiaries;

d. damages for the loss of love, companionship, society, advice and care of Karen A. Smith, the Plaintiffs and wrongful death beneficiaries suffered and will suffer in the future;

e. damages for the funeral expenses resulting from the death of Karen A. Smith;

f. damages for the value of life of Karen A. Smith;

g. damages for all other losses, both economic and intrinsic and tangible and intangible arising from the death of Karen A. Smith;

h. past pain and suffering;

I. past medical expenses;

j. extreme mental anguish and emotional distress;

k. statutory damages pursuant to 42 U.S.C. § 1983;

l. attorneys' fees pursuant to 42 U.S.C. § 1988;

m. punitive damages on all state and federal claims; and

n. other damages to be shown during discovery and at trial.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs respectfully request the following relief: That process is issued in accordance with law to the Defendants and that Plaintiffs be granted a jury trial and judgment from and against the Defendants as follows:

1. Reasonable compensatory damages from and against each Defendant, in their individual or official capacities, individually, jointly, severally and vicariously, as appropriate;

2. Punitive damages as to Plaintiffs' federal claims from Defendants in their individual capacities in an amount reasonably calculated to punish each Defendant and to deter similar conduct by other law enforcement personnel, jail personnel and others similarly situated;

3. Punitive damages as to Plaintiffs' state common law and statutory claims against Defendants in their individual capacities;

4. Pre-judgment interest on liquidated damages;

5. Post-judgment interest;

6. All costs associated with bringing this action and prosecution, including all costs of court, reasonable attorney fees and expenses pursuant to 42 U.S.C. 1988 and state law; and

7. General Relief, to which Plaintiffs may be entitled which has not been specifically pled.

Respectfully submitted, this the 14th day of June, 2016.

/s/ Victor Israel Fleitas

ROBERT G. MOORE, JR.
MS BAR NO. 102877
VICTOR I. FLEITAS
MS BAR NO. 10259

Moore Law Firm
Post Office Box 1990
Corinth, Mississippi 38835
(662) 286-9505 / Phone
(662) 594-1575 / Facsimile
bmoore@moorelawms.com / Email

Victor I. Fleitas, P.A.
452 North Spring Street
Tupelo, Mississippi 38804
(662) 840-0270 / Telephone
(662) 840-1047 / Facsimile
fleitasv@bellsouth.net / Email

Attorneys for Plaintiffs

CERTIFICATE OF SERVICE

I hereby certify that on June 14, 2016 I electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to the following:

Jason T. Marsh, Esq.
Phelps Dunbar
4270 I-55 North
Jackson, Mississippi 39211-6391
marshj@phelps.com

Robert G. Moore, Jr., Esq.
Moore Law Firm
Post Office Box 1990
Corinth, Mississippi 38835
bmoore@moorelawms.com

This the 14th day of June, 2016.

/s/ Victor Israel Fleitas

VICTOR I. FLEITAS